**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWARD BERMAN and ERIC INSLER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BODUM USA, INC.,<br><br>Defendant. | Case No: 1:26-cv-9731<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Edward Berman and Eric Insler ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action pertaining to the defective design and inadequate recall related to certain french presses manufactured, distributed and sold by Defendant Bodum USA, Inc. ("Bodum" or "Defendant"). Plaintiffs allege the following based on personal knowledge as to the facts pertaining to themselves and based on information and belief as to all other matters.

## I. NATURE OF THE ACTION

1. This proposed class action involves approximately 5.9 million dangerous French presses, which were subject to a delayed, deficient and defective Recall.[1] Specifically, the carafe can unexpectedly break during use if the glass carafe is damaged or cracked, including by use of a metal spoon to stir the coffee, posing a risk of serious burn injuries. (the "Defect").

2. On October 29, 2026, the Consumer Product Safety Commission ("CPSC"), together with Defendant, announced the Recall of approximately 5.9 Million French Presses sold at major retailers nationwide such as Target, Walmart, and coffee and home goods stores and online at Bodum.com, Amazon.com, Target.com, Walmart.com and other online retailers from 1974 through October 2026. Bodum has identified 70 reports of carafes breaking during use, including 48 reports of burns to consumers.[2] The Defect is uniform in each French Press subject to the Recall.

3. According to the Recall notice, Defendant sold approximately 5.9 million of these

---

[1] The Recall affects Defendant's French presses, including Bodum 8-cup and 12-cup Bistro, Brazil, Caffettiera, Chambord, Crema, Java, Jesper, and Kenya model French Press coffee makers with replaceable glass carafes. ("Product(s)" or "French Press(es)"). *See* https://www.cpsc.gov/Recalls/2027/Bodum-USA-Recalls-5-9-Million-French-Press-Coffee-Makers-with-Replaceable-Glass-Carafes-Due-to-Risk-of-Serious-Burn-Injury (last accessed November 2, 2026) (hereinafter "Recall"). Plaintiffs reserve the right to amend this complaint to include additional products arising from discovery.

[2] *Id.*

recalled French Presses for approximately $15 to $65.[3]

4. Per the Recall, customers were instructed to immediately inspect the glass carafe for cracks or damage and contact Bodum USA to receive the recall remedy, which is a Bodum-designed plastic stirring spoon and a warning label for the carafe.[4]

5. The Recall fails to offer ***any monetary relief*** to Plaintiffs and Class Members who purchased the defective French Presses. Instead of providing a proper remedy, Defendant merely supplies customers with a so-called “repair”, which is a Bodum-designed plastic stirring spoon and a warning label for the carafe. However, that does not resolve the underlying issue - that the glass is prone to cracking and poses a risk of serious burn injuries.

6. Moreover, the Recall was announced far too late and is inadequate for the reasons described herein. Bodum has identified 70 reports of carafes breaking during use, including 48 reports of burns to consumers.[5]

7. Defendant knew of these incidents, yet it did nothing. Defendant failed to timely issue any warning or make design changes. Instead, it continued profiting from sales to consumers throughout the United States.

8. Defendant is one of the world’s leading companies in the manufacturing of French Presses. Defendant should have known the risks associated with the French Presses’ design.

9. The French Presses were distributed and sold nationwide through major retailers and Defendant generated substantial revenue from nationwide sales of the French Presses,

10. Defendant was able to charge these premium prices through its marketing efforts

---

[3] *Id.*

[4] https://www.bodumfrenchpressrecall.expertinquiry.com/faq (last accessed November 2, 2026)

[5] https://www.cpsc.gov/Recalls/2027/Bodum-USA-Recalls-5-9-Million-French-Press-Coffee-Makers-with-Replaceable-Glass-Carafes-Due-to-Risk-of-Serious-Burn-Injury (last accessed November 2, 2026)

and by withholding from consumers the fact that the French Presses contain the Defect. Defendant knew that consumers prioritize safety and reliability, particularly any burning hazard associated with a product. Nonetheless, Defendant failed to disclose the Defect and associated risks.

11. The Defect existed at the point of purchase. Plaintiffs and Class Members reasonably believed the French Presses were safe for their intended use, purchased the French Presses and paid a premium based on that assurance.

12. Despite the Recall, the Defect remains, leaving the French Presses unsafe, unfit for use and worth substantially less than represented or warranted.

13. Each French Press contains the same inherent Defect, which was present at the time of sale and creates a serious safety risk to consumers, unknown to buyers, but was known or should have been known to Defendant. As a result, Plaintiffs and other reasonable consumers were placed at a disadvantage, subjected to Defendant's superior industry knowledge.

14. No reasonable consumer would have purchased the French Presses on the same terms had they known of the Defect. Defendant chose to expose consumers to the undisclosed Defect and associated risks in order to maximize sales. Even after the reported injuries became known, Defendant continued to prioritize profit over safety. Despite finally acknowledging the Defect, Defendant still fails to provide consumers, including Plaintiffs and Class Members, with any meaningful remedy.

15. Had Plaintiffs and Class Members known about the Defect, they would not have purchased the French Presses or would have paid less for them.

16. Defendant's Recall is inadequate and fails to provide an adequate remedy or any monetary relief to purchasers.

17. Plaintiffs, on behalf of themselves and the Class, seek damages and all other relief available at law and in equity for Defendant's misconduct. Plaintiffs also seek class wide injunctive

relief, including: (i) a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the French Presses; (ii) the implementation of a corrective advertising campaign to alert consumers to the dangers of the Defect; (iii) an offer to replace the French Presses with a reasonable and safe product; and/or (iv) a full refund of the purchase price.

18. This action seeks to hold Defendant accountable for its conscious decision to use a defective design, conceal the known hazards associated with the Defect and its insufficient recall remedy.

## II. PARTIES

### A. Plaintiffs

#### i. Plaintiff Edward Berman

19. At all relevant times, Plaintiff Berman was and is a resident and citizen of Fairfax, California. Plaintiff purchased a Java model of the French Presses. Plaintiff believes he purchased it in approximately 2021from a Costco in Novato, California, but cannot recall the amount he paid. The French Press purchased by Plaintiff is subject to the Recall.

20. Plaintiff used the French Press as instructed. Plaintiff was unaware of the Defect and associated risks at the time of his purchase until he learned of the Recall.

21. Had Plaintiff known of the Defect he would not have purchased the French Press or would have paid less for it.

22. Despite the Recall, Plaintiff is unable to safely use his French Press.

#### ii. Plaintiff Eric Insler

23. At all relevant times, Plaintiff Insler was and is a resident and citizen of Chicago, Illinois. Plaintiff purchased a Java model on January 20, 2021 from a Target in Willowbrook, Illinois for $24.99 plus tax. The French Press purchased by Plaintiff is subject to the Recall.

24. Plaintiff used the French Press as instructed. Plaintiff was unaware of the Defect and associated risks at the time of his purchase until he learned of the Recall.

25. Had Plaintiff known of the Defect he would not have purchased the French Press or would have paid less for it.

26. Despite the Recall, Plaintiff is unable to safely use his French Press.

### B. Defendant

27. Defendant is a Delaware corporation headquartered in New York. According to information and belief, Defendant or its subsidiaries are involved in the design, manufacturing, marketing, sale and distribution of the recalled Products.

28. Upon information and belief, Defendant directly or through third-party entities, designed, manufactured, distributed, marketed, advertised and sold the recalled French Presses in all 50 states, in retail stores and on internet platforms.

## III. JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act) because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is minimal diversity because Plaintiffs and Defendant are citizens of different states.

30. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this State. Defendant also does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution and sale of the French Presses in this District and engaged in the unlawful practices described in this Complaint within this District.

31. Under 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, as Defendant regularly transacts business in this District and Defendant has intentionally availed itself of the laws and markets within this District.

## IV. COMMON FACTUAL ALLEGATIONS

32. The CPSC announced a nationwide recall of the affected French Presses on October 29, 2026, uniformly affecting approximately 5.9 million French Press units sold in the United States. The Recall covers French Presses sold between approximately 1974 through October 2026 through major retailers including Target, Walmart, and coffee and home goods stores nationwide and online at Bodum.com, Amazon.com, Target.com, Walmart.com and other online retailers.[6]

33. Examples of the affected French Presses are pictured below:




[6] *Id.*




34. The CPSC confirmed that Defendant has identified 70 reports of carafes breaking during use, including 48 reports of burns to consumers.[7]

35. The Defect existed throughout the span of the Products' availability.

36. On information and belief, Defendant did not issue any proactive safety alerts to consumers before the joint CPSC recall announcement, nor did it take action to limit sales or require modifications for older units.

37. The known risk of cracking and burning due to the Defect, Defendant's dominant position in the coffee appliance market and the likelihood that a substantial portion of defective Products remain in use all support Plaintiffs' allegations that Defendant acted with knowledge of the Defect yet still represented, marketed, distributed and sold French Presses with the Defect.

38. Contrary to Defendant's representations to reasonable consumers promising safety and durability, Defendant chose to ignore the serious safety hazards presented by the uniform Defect present in each French Press and industry guidance and recommendations. In doing so, Defendant revealed that it is, in reality, committed to its own profits—not people and their safety.

[7] *Id.*

39. By conducting this required analysis of the French Presses, Defendant knew, or should have known, that the French Presses contained the Defect, and yet took no action to eliminate the Defect or, at the very least, adequately warn consumers of the Defect.

40. Accordingly, Defendant had a duty to investigate and disclose all safety hazards regarding the French Presses, including the Defect.

41. Despite having the capability and expertise to mitigate the risk, Defendant failed to redesign the Products, or issue sufficient consumer warnings. This delay contributed to the continued availability of defective French Presses. Nevertheless, Defendant prioritized profit over the integrity and safety of the French Presses and pushed the French Presses into the marketplace with the Defect.

42. As a direct result of Defendant's conduct, Plaintiffs and the proposed Class Members suffered economic losses by purchasing the French Presses at a price premium. Had Plaintiffs and Class Members known the truth about Defendant's mislabeled and defective Products, they would not have purchased them or would have paid less for them.

43. The Recall itself is also dangerously deficient, both because of the unreasonable delay in notifying consumers and because the offered repair is wholly inadequate due to Defendant's failure to offer any monetary remedy, the delay in providing the so-called repair, and that the repair will not fix the issue. Despite the Defect making the French Presses unsafe and unfit for their intended use, the French Presses continued to be sold.

44. In addition, the Recall and its accompanying repair are entirely inadequate and destined to fail because: (1) the Defect may remain; and (2) the Recall offers no monetary compensation to Plaintiffs or Class Members who purchased the defective French Presses,

45. A CPSC study found that recall response rates drop significantly when consumers face cognitive or task overload or when the recall fails to provide sufficient incentives to participate.[8]

46. Defendant deliberately chose the most profitable approach to its business and least harmful to its brand image, rather than a solution that would ensure the safety and durability of its French Presses.

47. Defendant's wrongful conduct harms the public-at-large. Namely, by misrepresenting the French Presses as safe and durable and by failing to disclose that the French Presses contain a uniform Defect and exposes consumers to risk of serious harm, the harm extends to all Class Members and consumers who may purchase the French Presses.

48. In addition, because Defendant continues to encourage consumers to use the French Presses as described herein, Defendant's actions pose an ongoing risk to the public.

49. As such, a public injunction is necessary to enjoin Defendant's continued harm of consumers and the public-at-large.

50. Similarly, should Defendant not be enjoined from its unlawful and deceptive conduct, Plaintiffs and Class Members face the potential for irreparable future harm, including purchasing the French Presses which are not safe or durable and instead, contain a uniform Defect and exposes consumers to risk of serious harm.

## V. TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

51. Defendant continuously manufactured, marketed and sold the defective Products to unsuspecting customers. At all times relevant, it continuously represented that the Products were

---

[8] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at p. 26 (last accessed November 2, 2026).

fit for their intended use.

52. By continuously repeating these false representations and failing to disclose that the Products contain the Defect, Defendant engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendant might seek to apply.

53. As the designer and manufacturer of the Products, Defendant knew or should have known of the Defect before distributing the Products into the consumer marketplace.

54. Defendant's knowledge of the Defect is evidenced by, amongst other things, the Recall notice, and the 70 reports of carafes breaking during use, including 48 reports of burns to consumers.

55. Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the Defect, and yet Defendant knowingly continued to allow the sale of the Products. Plaintiffs' and other Class Members' claims are therefore not time-barred.

56. Moreover, even after the Recall, there is no evidence that news of the Defendant's Recall notice or Defect reached all Product owners.

57. Plaintiffs and other Class Members could not reasonably discover and could not know facts that would cause a reasonable person to suspect that Defendant knowingly failed to disclose material information within its knowledge about the Defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations applies.

58. Throughout the time period relevant to this action, Defendant concealed from, and failed to disclose to, Plaintiffs and the other Class Members vital information about the Defect described herein.

59. Defendant kept Plaintiffs and the other Class Members ignorant of vital information essential to pursue their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

60. Defendant had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Products and that the Products have a uniform Defect.

61. Instead, Defendant continued to market the Products as suitable for their intended purpose to further profit from the sale of its popular Products and prevent Plaintiffs and other Class Members from seeking redress.

62. Plaintiffs and the other Class Members justifiably relied on Defendant to disclose the true nature of the Product they purchased and/or owned because the Defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

63. Defendant's affirmative acts of concealment, including its continued marketing of the defective Products as safe, reliable and fit for their intended purpose while possessing knowledge of the Defect, further support estoppel and tolling of any applicable limitations period.

## VI. FEDERAL RULE OF CIVIL PROCEDURE 9(b) ALLEGATIONS

64. Although Defendant is in the best position to know information about the design, manufacture, distribution and sale of the French Presses as well as the facts surrounding the Defect during the relevant timeframe, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

65. **WHO**: Defendant made material misrepresentations and/or omissions of fact through its marketing, on its website, product packaging, warranties, Owner's Manuals and labeling, through warranty claims, through reports of injuries associated with the French Presses and the Defect and through authorized retailers of the French Presses, which include statements such that the French Presses are not defective and are safe and suitable for their intended use.

66. **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the French Presses are defective, unsafe and unsuitable for their intended use in that the French Presses contain a uniform Defect. Defendant's employees and

representatives made affirmative misrepresentations as a part of Defendant's marketing of the French Presses to Plaintiffs and Class Members at the time of purchase regarding the same qualities. Defendant failed to adequately warn Plaintiffs and Class Members that the French Presses contained the Defect, were not suitable for their intended use and the French Presses' Defect caused burn injuries. Further, Defendant's conduct has the effect of deceiving Plaintiffs and Class Members into believing that the French Presses are not defective, and instead, are suitable for their intended use. Defendant knew, or should have known, the existence of the Defect is material to the reasonable consumer, including Plaintiffs and Class Members, and impacts their purchasing decisions, and yet Defendant omits a necessary warning that the French Presses are defective and are unsafe and unsuitable for their intended use.

67. **WHEN**: Defendant made material misrepresentations and/or omissions during the putative class periods, including any applicable tolling, and at the time Plaintiffs and Class Members purchased the French Presses and continuously throughout the applicable class periods, including through the Recall notice.

68. **WHERE**: Defendant's marketing message and omissions were uniform and pervasive, carried through material misrepresentations and omissions on the French Presses' labeling and packaging, its website(s) and the websites of authorized retailers.

69. **HOW**: Defendant made material misrepresentations of material facts regarding the French Presses, including, but not limited to, the existence of the uniform Defect as well as the associated risks.

70. **WHY**: Defendant made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiffs, Class Members and all reasonable consumers to purchase and/or pay a premium price for the French Presses, the effect of which was Defendant profited by selling the French Presses to many thousands of consumers.

71. **INJURY**: Plaintiffs and Class Members purchased, paid a premium or otherwise paid more for the Products when they otherwise would not have absent Defendant's misrepresentations and omissions.

## VII. CLASS ALLEGATIONS

72. Plaintiffs bring this action individually and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of themselves and the members of the following proposed nationwide class ("Nationwide Class"):[9]

> During the fullest period allowed by law, all persons who purchased a Product in the United States, for personal use and not resale, until the date notice is disseminated.

73. Plaintiff Berman further brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of himself and the members of the following class ("California Class"):

> During the fullest period allowed by law, all persons who purchased a Product in the State of California, for personal use and not resale, until the date notice is disseminated.

74. Plaintiff Insler further brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of himself and the members of the following class ("Illinois Class"):

> During the fullest period allowed by law, all persons who purchased a Product in the State of Illinois, for personal use and not resale, until the date notice is disseminated.

75. Members of the Nationwide Class, California Class and Illinois Class are referred to collectively as the "Class Members."

---

[9] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, California Class and Illinois Class.

76. Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definition, as necessary.

77. This action is brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

78. **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, Defendant sold approximately 5.9 million Products throughout the United States and upon information and belief, there are hundreds of thousands of putative Class Members. Moreover, the number of members of the Class may be ascertained from Defendant's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

79. **Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the Products contain the Defect alleged herein;

b. Whether Defendant knew, or should have known, of the Defect;

c. Whether Defendant had a duty to disclose the Defect to consumers;

d. Whether Defendant's conduct alleged herein violated the consumer protection statutes alleged herein;

e. Whether Defendant failed to adequately warn Plaintiffs and Class Members that the Products contained the Defect and associated risks of harm;

f. Whether Defendant's representations and omissions were misleading or deceptive;

g. Whether Defendant omitted or failed to disclose material information to Plaintiffs and Class Members regarding the Products;

h. Whether Defendant concealed from and/or failed to disclose to Plaintiffs and Class Members that the Products contain the Defect;

i. Whether Defendant's conduct was unfair or illegal;

j. Whether Plaintiffs and Class Members suffered economic injury;

k. Whether Defendant's conduct violates public policy;

l. Whether Plaintiffs and putative members of the Class suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

m. Whether Defendant was unjustly enriched at the expense of Plaintiffs and members of the putative Class in connection with selling the Products with the Defect;

n. Whether Plaintiffs and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief; and

o. Whether Plaintiffs and Class Members are entitled to injunctive, declaratory or other equitable relief including modification of the Recall.

80. **Typicality**. Plaintiffs' claims are typical of those of the absent Class Members in that Plaintiffs and the Class Members purchased and used the Products, and sustained damages arising from Defendant's wrongful conduct, as disclosed herein. Plaintiffs share the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiffs and all members of the putative Class are similarly affected by Defendant's common misconduct alleged herein. Plaintiffs and all members of the putative Class sustained monetary and economic injuries including—but not limited to—ascertainable losses resulting from Defendant's deceptive representations and omissions concerning the Products, the existence of the Defect, the risks attributable to the Defect and the Products' fitness for their intended purpose, as well as the proposed repair's ability to function as intended.

81. **Adequacy**. Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiffs retained counsel with substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs have no conflicts of interest or interests adverse to those of putative Class.

82. **Insufficiency of Separate Actions**. Absent a class action, Plaintiffs and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

83. **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Plaintiffs and Class Members will continue to be deceived by Defendant's representations regarding the inadequate Recall. Defendant acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, are necessary in this action.

84. Plaintiffs further seek injunctive and declaratory relief requiring Defendant to cease its unfair, deceptive and unlawful conduct, including a complete recall of the Products and full reimbursement for the Products' full purchase price.

85. Plaintiffs and Class Members were harmed and will experience irreparable future harm should Defendant's conduct not be enjoined because they will continue to use the Products, which may still contain the Defect even if the repair is made.

86. **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiffs and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiffs and the members of the putative Class can obtain redress for the harm caused by Defendant's misconduct.

87. In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendant; and

b. Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests.

## VIII. CAUSES OF ACTION

### COUNT I

### COMMON LAW FRAUD
***(By Plaintiffs, individually, and on behalf of the Nationwide Class)***

88. Plaintiffs reallege paragraphs 1 through 87 as if fully set forth herein.

89. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the safe and durable marketing related to the Products, when in fact the Products contain the Defect.

90. Defendant knowingly, willfully, fraudulently and/or recklessly concealed and suppressed material facts regarding the Products.

91. As detailed herein, Defendant made false or misleading statements to Plaintiffs and Class Members regarding the safety of the Products. These uniform and pervasive representations were made through Defendant's marketing of itself and the Products as industry leaders in safety, including on the Products' labels and packaging materials, the websites of Defendant and its authorized retailers and other promotional materials for the Products.

92. Defendant's representations were false and misleading because the Products contain the Defect and the associated risks of harm to consumers.

93. As described herein, prior to and after distributing the Products into the consumer marketplace, Defendant knew that the Products contained the Defect and presented the associated risks to consumers. Nonetheless, Defendant, through its misrepresentations, misleading statements and omissions detailed herein, continued to sell the Products in the United States, in order to increase its own profits, and garner market share, while putting the wellbeing of more consumers at risk.

94. Defendant knew the representations were false and intended that Plaintiffs and Class Members rely on them.

95. Defendant's conduct was further fraudulent because Defendant failed to disclose the Defect associated with the Products. Specifically, Defendant failed to adequately warn Plaintiffs and Class Members that the Products contained the Defect, were not safe or durable and could cause and had caused consumers to suffer harm.

96. These misrepresentations and omissions were material to Plaintiffs' and Class Members' decision to acquire the Products. Plaintiffs and members of the Classes justifiably relied on Defendant's misrepresentations of material facts and omissions regarding the Products, as described herein.

97. Defendant has a duty to disclose the truth regarding the safety of the Products, because the safety of the Products has a direct impact on the health and safety of the consumers who utilize them. This duty arose from the fact that Defendant: had exclusive and/or far superior knowledge and access to knowledge regarding the safety and durability of the Products; affirmatively and intentionally concealed material facts from Plaintiffs and Class Members; and knew that the Products were not safe for their marketed and intended use.

98. The material facts Defendant represented and omitted to disclose were made to Plaintiffs and members of the Classes when they purchased the Products.

99. Defendant intended that its misrepresentations and omissions of material fact would deceive or mislead Plaintiffs and members of the Classes and induce them to purchase the Products.

100. Plaintiffs and members of the Classes justifiably relied on Defendant's misrepresentations and omissions of material facts regarding the Products, as described herein.

101. Defendant's conduct showed malice, motive and a reckless disregard of the truth such that an award of punitive damages is appropriate. Because Defendant's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

102. Defendant's misrepresentations and omissions of material facts directly and proximately caused the damages suffered by Plaintiffs and members of the Classes.

103. As a result of Defendant's misrepresentations and omissions of material facts, Plaintiffs and members of the Classes were damaged in an amount to be proven at trial.

## COUNT II

### UNJUST ENRICHMENT/QUASI CONTRACT
***(By Plaintiffs, individually, and on behalf of the Nationwide Class)***

104. Plaintiffs reallege paragraphs 1 through 87 as if fully set forth herein.

105. Plaintiffs and the putative Class Members conferred a benefit on Defendant by purchasing the Products—payments that Defendant knowingly accepted while aware of the Products' Defect and unfitness for their intended use.

106. Defendant either knew, or should have known, that the payments rendered by Plaintiffs and Class Members were given with the expectation that the Products had the qualities, characteristics and suitability for the use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

107. By its wrongful acts and omissions described herein, including selling the Products, which contained both a Defect and were inoperative for their intended use, Defendant was unjustly enriched at the expense of Plaintiffs and putative Class Members.

108. Defendant's wrongful conduct directly caused Plaintiffs' detriment and resulted in Defendant's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

109. Defendant unjustly profited from its unlawful, unfair and deceptive conduct at the expense of Plaintiffs and the putative Class Members. It would be inequitable and contrary to principles of justice for Defendant to retain the profits, benefits and other compensation obtained

through the sale of the Products, as such enrichment was directly tied to the misconduct alleged herein.

110. Defendant was unjustly enriched by retaining revenue from Class Members' purchases of the Products. Such enrichment is unjust and inequitable because Defendant knowingly manufactured, marketed and sold defective Products while omitting material facts, causing Plaintiffs and Class Members to purchase Products they otherwise would not have purchased had the truth been disclosed.

111. Defendant continued to manufacture the Products with the inherent Defect even after knowing—and concealing—70 reports of carafes breaking during use, including 48 reports of burns to consumers. Even after these known incidents, Defendant continued to tout the safety of its Products, considerably profiting for decades.

112. Defendant's conduct allows it to knowingly realize substantial revenue from selling the Products at the expense of, and to the detriment of, Plaintiffs and Class Members, and Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental justice, equity and good conscience principles.

113. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

114. Plaintiffs and members of the Class seek disgorgement of all profits resulting from such overpayment.

## <u>COUNT III</u>

**California Consumers Legal Remedies Act ("CLRA")**
**Violation of California Civil Code §§ 1750, *et seq*.**
***(By Plaintiff Berman, individually, and on behalf of the California Class)***
**(*for injunctive relief only*)**

115. Plaintiff Berman realleges paragraphs 1 through 87 as if fully set forth herein.

116. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, et seq.

117. Plaintiff Berman and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of the Products to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The Products purchased by Plaintiff Berman and the Class are "goods" within the meaning of the statute. Cal. Civ. Code § 1761(a).

118. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Berman and the Class which were intended to result in, and did result in, the sale of Products with the uniform Defect:

a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

b. "Representing that the Products are of a particular standard, quality and grade when they are not" (a)(7);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

e. "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." (a)(16).

119. Defendant's unfair or deceptive acts or practices, including its concealments, omissions and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Berman and California Class Members, about the true safety, quality and true value of the Products.

120. Further, despite Defendant's knowledge of material facts concerning the existence of the Defect and associated risk of harm posed by the Products, Defendant actively concealed the

risk of harm and the Defect from consumers by failing to disclose the risk of harm or Defect to consumers.

121. Defendant knew, or otherwise should have known, that the Products contained the Defect and posed a risk of harm based upon: (1) Defendant's own internal testing, data and surveys; (2) Defendant's Recall; and (3) 70 reports of carafes breaking during use, including 48 reports of burns to consumers.

122. Defendant omitted, concealed and failed to disclose to consumers that the Products pose a risk of harm to consumers, including that the Products' design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing a risk of harm to consumers. Rather than disclose this information, Defendant marketed the Products as safe and suitable for their intended purpose.

123. The facts concealed and/or not disclosed by Defendant to consumers, including Plaintiff Berman and other Class Members, were material, in part, because they concerned an essential aspect of the Products, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Products. Rather than disclose this information, Defendant marketed the Products as complying with safety standards, with the utmost manufacturing and design.

124. Plaintiff Berman and the California Class suffered injury in fact and actual damages resulting from Defendant's material misrepresentations and omissions.

125. Defendant's violations present a continuing risk to Plaintiff Berman and the California Class, as well as to the general public, and therefore affect the public interest.

126. Defendant is on notice of the issues raised in this Count and this Complaint by way of, among other things, the Recall, as well as its own intrinsic knowledge of defect, consumer complaints and notice of consumer harm.

127. Accordingly, pursuant to Civil Code § 1780(a)(2), Plaintiff Berman, on behalf of himself and all other members of the Class, seeks injunctive relief, including an order to enjoin Defendant from continuing its deceptive advertising and sale practices.

## COUNT IV

**CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.***
***(By Plaintiff Berman, individually, and on behalf of the California Class)***

128. Plaintiff Berman realleges paragraphs 1 through 87 as if fully set forth herein.

129. Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

130. Plaintiff Berman and California Class Members who purchased Defendant's Products suffered an injury by virtue of buying Products in which Defendant omitted the Products' true quality. Had Plaintiff Berman and California Class Members known that Defendant omitted material information regarding the Products, they would not have purchased the Products.

131. Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this Complaint, including, without limitation, violations of the CLRA.

132. There is no benefit to consumers or competition by allowing Defendant to deceptively label, market and advertise its Products.

133. Defendant's conduct, as described herein, also constitutes a "fraudulent" business practice violative of the UCL. As explained in the preceding paragraphs, Defendant's false statements about the Products fraudulently present the impression that the Products were adequately safe to be used by a consumer and could be operated as marketed and intended. This

conduct was designed to—and did—deceive consumers as to the true quality and value of the Products they purchased.

134. Defendant knew, or should have known, that its false representations and conduct constituted unlawful, unfair and fraudulent business practices likely to deceive reasonable consumers.

135. Plaintiff Berman and Class Members suffered injuries, in fact, and lost money as a result of Defendant's UCL violations in that they were deceived into purchasing the Products, which were not adequately safe or able to be used for their intended purpose.

136. At a minimum, to the extent the Court ultimately deems the remedies at law that Plaintiff Berman requests inadequate, Plaintiff Berman and the California Class Members are entitled to equitable relief such as restitution and injunctive relief under California Business and Professional Code § 17203, enjoining Defendant from continuing to conduct business through unlawful, unfair and fraudulent acts and practices.

137. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff Berman and other California Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

## COUNT V

### Illinois Consumer Fraud and Deceptive Practices Act
### Violation of 815 ILCS 505/1, *et seq.*
### *(By Plaintiff Insler, individually, and on behalf of the Illinois Class)*

138. Plaintiff Insler realleges paragraphs 1 through 87 as if fully set forth herein.

139. Plaintiff Insler is a "person" as defined in 815 ILCS 505/1(c).

140. Plaintiff Insler is a "consumer" as defined in 815 ILCS 505/1(e), as he purchased the French Press "not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."

141. Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a corporation engaged in trade or commerce.

142. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

143. Defendant engaged in deceptive acts and practices by uniformly failing to disclose the Products' Defect to consumers at or before the time of sale.

144. Defendant knew or should have known of the Defect based on, *inter alia*, consumer complaints, incident reports and the nature of the Defect itself.

145. Defendant had a duty to disclose the Defect because it relates to a safety hazard, was known to Defendant, and was not known or reasonably discoverable by consumers.

146. The Defect is latent and manifests only during use, and therefore would not be discovered by reasonable consumers prior to purchase.

147. The omitted Defect is material because a reasonable consumer would consider the existence of a burn hazard important in deciding whether to purchase the Products or how much to pay for it.

148. Defendant intended that consumers, including Plaintiff Insler, rely on its omissions and the absence of any disclosure of the Defect when purchasing the Products.

149. Defendant also engaged in unfair acts and practices by selling Products with a known safety Defect and failing to provide an adequate remedy.

150. Defendant's conduct offends public policy, is immoral, unethical, oppressive and unscrupulous and presents a risk of substantial injury to consumers.

151. Defendant's Recall does not remedy the Defect. Therefore, even with the Recall, and despite Defendant's representations that the Recall adequately addresses the Defect, the Defect and associated burn hazards remain.

152. As a direct and proximate result of Defendant's deceptive and unfair conduct, Plaintiff Insler and Illinois Class Members suffered actual damages.

153. Had Defendant disclosed the Defect, Plaintiff Insler and Illinois Class Members would not have purchased the Products or would have paid significantly less for them.

154. Plaintiff Insler and Illinois Class Members paid more for the Products than they were worth and received Products that were defective, unsafe and unfit for their ordinary purpose.

155. By reason thereof, Plaintiff Insler and Illinois Class Members are entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, and awarding actual damages, punitive damages, costs, and attorneys' fees.

## COUNT VI

### Illinois Deceptive Trade Practices Act
### Violation of 815 ILCS 510/2, *et seq.*
***(By Plaintiff Insler, individually, and on behalf of the Illinois Class)***

156. Plaintiff Insler realleges paragraphs 1 through 87 as if fully set forth herein.

157. The Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq*. ("UDTPA") prohibits deceptive trade practices in the course of a business, vocation or occupation. 815 ILCS 510/2(a).

158. In the course of its business, Defendant, through itself, its agents, employees and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose material facts regarding the reliability, safety and performance of the Products, as detailed herein.

159. Specifically, by misrepresenting the Products as safe and suitable for their marketed and intended use, and by failing to disclose and actively concealing the dangers and risk posed by the Defect, Defendant engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

a. Representing that the Products have characteristics, uses, benefits, and qualities which they do not have;

b. Representing that the Products are of a particular standard, quality, and grade when they are not;

c. Advertising the Products with the intent not to sell them as advertised; and

d. Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

815CS 510/2(a)(5), (7), (9) and (12).

160. Defendant's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Insler and Class Members, about the true safety and reliability of the Products, the quality of the Products and the true value of the Products.

161. Defendant's scheme and concealment of the true characteristics of the products were material to Plaintiff Insler and Class Members, as Defendant intended.

162. Had they known the truth, Plaintiff Insler and Class Members would not have purchased French Presses or would have paid significantly less for them.

163. Plaintiff Insler and Class Members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant concealed or failed to disclose.

164. Plaintiff Insler and Class Members did not, and could not, unravel Defendant's deception on their own.

165. Defendant had an ongoing duty to Plaintiff Insler and Class Members to refrain from unfair or deceptive practices under the Illinois UDTPA in the course of its business.

166. Specifically, Defendant owed Plaintiff Insler and Class Members a duty to disclose all the material facts concerning the Products because Defendant possessed exclusive knowledge, intentionally concealed the true characteristics of the Products from Plaintiff Insler and Class Members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

167. Plaintiff Insler and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations and/or failure to disclose material information.

168. Defendant's violations present a continuing risk to Plaintiff Insler and Class Members, as well as to the general public.

169. Defendant's unlawful acts and practices complained of herein affect the public interest.

170. Pursuant to 815 ILCS 510/3, Plaintiff Insler and Class Members seek an order enjoining Defendant's unfair or deceptive acts or practices and any other just and proper relief available under the Illinois UDTPA.

## COUNT VII

## NEGLIGENCE

***(By Plaintiffs, individually, and on behalf of the Nationwide Class, or in the Alternative, individually, and on behalf of the California and Illinois Classes)***

171. Plaintiffs reallege paragraphs 1 through 87 as if fully set forth herein.

172. Defendant directly or indirectly caused the Products to be sold, distributed, packaged, labeled, marketed, promoted and/or used by Plaintiffs and the other Class Members.

173. At all times relevant, Defendant had a duty to exercise reasonable care in the design, testing, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale and distribution of the Products, including the duty to take all reasonable steps necessary to manufacture, promote and/or sell a product that was not unreasonably dangerous to consumers and users of the Products.

174. Defendant's duty of care owed to consumers and the general public included providing accurate, true and correct information concerning the risks of using the Products and appropriate, complete and accurate warnings concerning the potential safety risks regarding the use of the Products, and, in particular, their uniform Defect.

175. Defendant knew, or otherwise should have known, that the Products posed serious safety risks to consumers, because of, among other things, their own internal testing, data and surveys, the Recall and the multiple reports of the Defect.

176. Defendant also knew or, in the exercise of reasonable care should have known, that users and consumers of the Products were unaware of the Defect of the Products and the associated risks.

177. Defendant omitted, concealed and failed to disclose to consumers that the Products pose serious safety risks to consumers, including that the Products were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and contained a Defect.

178. Defendant was negligent in the following respects:

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products without thorough and adequate pre-and post-market testing;

b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products while negligently and/or intentionally concealing and failing to disclose the results of trials and tests, and, consequently, the risk of serious injury associated with use of the Products;

c. Failing to use reasonable and prudent care in the design, research, manufacture and development of the Products to avoid the risk of serious harm to consumers associated with the prevalent use of the Products;

d. Failing to provide adequate instructions, guidelines and safety precautions to those consumers whom Defendant could reasonably foresee would use the Products;

e. Failing to disclose to Plaintiffs, Class Members, users/consumers and the general public that use of the Products presented risks or serious injury to consumers;

f. Failing to warn Plaintiffs and Class Members, consumers and the general public that the Products' risk of harm was unreasonable and that there were safer and effective alternative Products available to Plaintiffs and other consumers;

g. Representing that its Products were safe for their intended use when, in fact, Defendant knew, or should have known, that the Products were not safe for their intended purpose;

h. Failing to timely or adequately make and/or submit any changes to the Products' labeling or other promotional materials that would alert the consumers and the general public of the risks of the Products and related Defect;

i. Advertising, marketing and recommending the use of the Products while concealing and failing to disclose or warn of the dangers known by Defendant to be associated with or caused by the use of the Products and/or Defect;

j. Continuing to disseminate information to its consumers, which indicates or implies that Defendant's Products are safe and suitable for their advertised and intended use;

k. Continuing the manufacture and sale of its Products with the knowledge that the Products were unreasonably unsafe and dangerous to consumers; and

l. Implementing the inadequate Recall.

179. Defendant knew, or otherwise should have known, that it was foreseeable that consumers, including Plaintiffs and the other Class Members, would be placed at risk of serious injury as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution and sale of the Products.

180. Plaintiffs and the other Class Members did not know the nature and extent of the injuries that could result from the intended use of the Products.

181. Defendant's negligence was the proximate cause of the injuries, harm and economic losses that Plaintiffs and the other Class Members suffered, as described herein.

182. Defendant's failure to warn or instruct was a substantial factor in causing Plaintiffs' and other Class Members' harm.

183. Defendant's conduct, as described above, was reckless. Defendant regularly risked the lives of consumers and users of the Products, including Plaintiffs and the other Class Members, with full knowledge of the dangers of the Products. Defendant made conscious decisions not to redesign, re-label, warn or inform the unsuspecting public, including Plaintiffs and the other Class Members.

184. Defendant further made the decision to issue the insufficient and inadequate Recall, as described above.

185. As a direct and proximate result of Defendant's wrongful acts and omissions in placing the defective Products into the stream of commerce without adequate warnings of the risks of serious injury, Plaintiffs and the other Class Members were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully requests that the Court enter judgement against Defendant as follows:

a. Certification of the proposed Classes, including appointment of Plaintiffs' counsel as class counsel;

b. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent and unfair business practices alleged in this Complaint;

c. An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

d. An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

e. An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

f. An award of restitution in an amount to be determined at trial;

g. An award of non-restitutionary disgorgement of profits in an amount to be determined at trial;

h. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

i. For reasonable attorneys' fees and the costs of suit incurred; and

j. For such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: November 5, 2026

**BEN TRAVIS LAW, APC**

*/s/ Ben Travis*
Ben Travis
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (619) 353-7966
Email: ben@bentravislaw.com

Attorney for Plaintiffs

**VENUE AFFIDAVIT**

I, Edward Berman, declare and state as follows:

1. I am the named Plaintiff in this action and make this affidavit pursuant to California Civil Code § 1780(d).

2. The Complaint in this action is filed in a proper place for trial of this action because Defendant has its principal place of business and is doing business in New York County. Furthermore, one or more of the transactions that form the basis of this action occurred in New York County.

I declare under penalty of perjury under the laws of the state of California and the United States that the foregoing is true and correct.

Executed on November 5, 2026 in Fairfax, California.

edward berman

EDWARD BERMAN